IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| EVERLOVE OKU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:25-cv-516 (RDA/IDD) |
| | ) |
| TRUMBULL INS. CO., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss.  Dkt. 12.  This Court has dispensed with oral argument as it would not aid in the decisional process.  Fed. R. Civ. P. 78(b); Local Civil Rule 7(J).  These matters have been fully briefed and are now ripe for disposition.  Considering the Motion together with the Amended Complaint (Dkt. 11), the Memorandum in Support (Dkt. 13), Plaintiff's Opposition (Dkt. 15), and Defendants' Reply (Dkt. 16), this Court GRANTS-IN-PART and DENIES-IN-PART the Motion to Dismiss for the reasons that follow. [1]

### I.  BACKGROUND
#### A.  Factual Background[2]

Plaintiff Everlove Oku is a resident of La Plata, Maryland and owns property located at 10418 Madison Drive, Lorton, Virginia 20709 (the "Property").  Dkt. 11 ¶ 4.  Defendant Trumbell Insurance Company ("Trumbell") is a Connecticut corporation with its principal place of business

---

[1] Unless otherwise noted, all citations are the CM/ECF assigned page numbers.

[2] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

in Hartford, Connecticut, and registered to conduct business in Virginia. *Id.* ¶ 5. Defendant The Hartford Insurance Group, Inc. ("Hartford") is similarly a Connecticut corporation with its principal place of business in Hartford, Connecticut, and licensed to do business in Virginia. *Id.* ¶ 6. Trumbull is a subsidiary of Hartford. *Id.* ¶ 7.

Plaintiff purchased the Property in October 2018. *Id.* ¶ 8. Plaintiff obtained a home insurance policy from Trumbull on September 26, 2018. *Id.* ¶ 9. Plaintiff renewed the policy to provide for protection between September 26, 2019, and September 26, 2020. *Id.* ¶ 10. Plaintiff attached the policy, insurance policy number 55RBF402638 (the "Policy"), to the Amended Complaint. Dkt. 11-1. The Policy states that it was "issued by Trumbull Insurance Company." *Id.* at 1. Elsewhere in the Policy, however, the paperwork provides: "Thank you for being part of the AARP® Home Insurance Program from The Hartford." *Id.* at 3; *id.* at 4 ("As a policyholder with The Hartford . . ."); *id.* at 8 ("While insured with The Hartford, we may inspect your property.").[3]

On October 4, 2019, the Property was involved in a house fire which resulted in a total loss of the home (the "Fire"). Dkt. 11 ¶ 11. The following day, on October 5, 2019, Plaintiff reported the incident to Hartford pursuant to the Policy. *Id.*

Pursuant to Section I, the Policy provided property coverage in the declarations as follows: (a) a limit of liability for the "Dwelling" at $310,000; (b) a limit of liability for "Other Structures" at $31,000; (c) a limit of liability for "Personal Property" at $232,500; and (d) a limit of liability for "Loss of Use" at $93,000. *Id.* ¶ 12. In the event of a total loss under the Policy, the limitation on liability for the Dwelling was increased to equal the current replacement cost of the Dwelling,

---

[3] Indeed, the Policy makes reference to Trumbull only seven times, while The Hartford is mentioned approximately forty times.

but such increase was not to exceed 1.5 times the coverage of the amount shown in the declarations. *Id.* ¶ 13; Dkt. 11-1 at 6 ("Limit is 123% of the Estimated Replacement cost of your home[.]  If a total loss exceeds this limit, up to 50% more coverage may apply").  If there is a Total Loss to a Dwelling (the "Total Loss Provision"), the Policy provides for a 1.5 increase in coverage, if certain conditions apply, including that the homeowner has "elected to repair or replace the damaged or destroyed dwelling building."  Dkt. 11-1 at 10. The Total Loss Provision further provides: "We will pay no more than the smallest of the following amounts for like construction and use on the same premises: 1. The replacement cost of that part of the building damaged or destroyed; 2. The necessary amount actually spent to repair or replace the damaged or destroyed building; or 3. The limit of liability under this policy that applies to the building, increased in accordance with paragraphs B.1. and B.2. of this endorsement." *Id.*  The Total Loss Provision also limits coverage by stating, "we will pay no more than the actual cash value of the damage until actual repair or replacement is complete." *Id.*  Additionally, the Policy Declarations, also attached to the Amended Complaint, state as follows:

> 3. Loss Settlement. Covered property losses are settled as follows:
>
> ***
>
> c. We will pay replacement cost without deduction or depreciation for buildings under Coverage A or B subject to the following:
>
>> (1) We will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:
>>
>>> (a) the limit of liability under this policy that applies to the building;
>>>
>>> (b) the replacement cost of that part of the building damages for like construction and used on the same premises; or
>>>
>>> (c) the necessary amount actually spent to repair or replace the damaged building.

(2) We will settle covered losses to:

(a) the dwelling under Coverage A after adjusting the limit of liability shown in the Declarations as described in Condition 3.c.(2)(b), provided you:

(i) insure the dwelling to 100% of its replacement cost as determined by us;

(ii) allow us to adjust the Coverage A Limit of liability and the premium annually in accordance with the property evaluations we make, and any increases in inflation;

(iii) notify us, within 30 days of completion, of any alterations to the dwelling which increase the replacement cost of the dwelling by 5% or more; and

(iv) elect to repair or replace the damaged building.

(b) If you comply with the provisions of Condition 3.c.(2)(a), we will:

(i) increase the Coverage A limit of liability to equal the current replacement cost of the dwelling if the amount of the loss to the dwelling is more than the limit of liability indicated on the Declaration Page. However, in no event will such increased limit exceed the lesser of:

1) two times the Coverage A amount shown in the Declarations; or

2) the Coverage A amount shown in the Declarations plus $250,000.

(ii) also increase by the same percentage applied to Coverage A the limit of liability for Coverage B, C and D. However, we will do this only if Coverage A limit of liability is increased under paragraph (2.)(b.)(i.) above as a result of a Coverage A loss;

(iii) adjust the policy premium from the time of loss for the remainder of the policy term based on the increased limits of liability.

*** 

4

> (5) We will pay no more than the actual cash value of the damage unless:
>
> > (a) actual repair or replacement is complete;

Dkt. 11-2.

Plaintiff asserts that, pursuant to this 1.5 increase, she is owed a total of $999,750 in coverage based on: (a) $465,000 for her Dwelling; (b) $46,500 for Other Structures; (c) $348,750 for Personal Property; and (d) $139,500 for Loss of Use. Dkt. 11 ¶ 15. In a letter dated January 16, 2025, from Hartford to Plaintiff, Hartford confirmed on November 19, 2025, that the applicable limit for the Dwelling would be $560,000 pursuant to the Policy Declarations. *Id.* ¶ 18. Including that adjustment, Plaintiff asserts that she is entitled to a total of $1,094,750, which consists of: (a) $560,000 for her Dwelling; (b) $46,500 for Other Structures; (c) $348,750 for Personal Property; and (d) $139,500 for Loss of Use. *Id.* ¶ 19. Plaintiff asserts that, at the time of the filing of the Amended Complaint, she had been paid a total of $833,067.80, which consists of: (a) $385,427.80 for her Dwelling; (b) $31,000 for Other Structures; (c) $297,600 for Personal Property; and (d) $119,040 for Additional Living Expenses/Loss of Use. *Id.* ¶ 20. She asserts that she is owed an additional $259,832.85 and that such amounts are subject to inflation and interest. *Id.* ¶¶ 21-22. Plaintiff asserts a single count of breach of contract.

## B. Procedural Background

Plaintiff originally filed this case *pro se* in the Circuit Court of Fairfax County on February 3, 2025. Dkt. 1. Defendants removed this matter on March 25, 2025. *Id.* Plaintiff retained counsel and filed an Amended Complaint on May 7, 2025. Dkt. 11. On May 30, 2025, Defendants filed their Motion. Dkt. 13. On June 13, 2025, Plaintiff filed her Opposition. Dkt. 15. On June 20, 2025, Defendants filed their Reply. Dkt. 16.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).  "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).  Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## III.   ANALYSIS

In the Motion, Defendants argue: (1) that Hartford is not properly named as a defendant; (2) that Plaintiff's claims are time-barred; and (3) that Plaintiff fails to state a claim because there has been no breach in light of the policy conditions.  The Court will address each argument in turn.

A.      Whether Hartford is Properly Named as a Defendant

Defendants argue that Hartford is not Plaintiff's insurer, because the Policy states that it was issued by Trumbull. Dkt. 11-1 at 2, 5. Plaintiff notes that Hartford appears all over the Policy and related documents. Dkt. 15 at 4. Neither party cites any case authority. Based on the Policy documents, the Court notes that, at a minimum, Hartford held itself out as insuring Plaintiff. Dkt. 11-1 at 4 ("As a policyholder with The Hartford . . ."); *id.* at 8 ("While insured with The Hartford . . . ."). Defendants cite to no provision that would clarify that Hartford had no responsibilities to Plaintiff and cites to no authority that would provide for dismissal of Hartford in these circumstances. Accordingly, the Motion is denied in this regard.

B.      Whether Plaintiff's Claims are Time-Barred

The Policy provides that: "No action can be brought unless the policy provisions have been complied with and the action is started withing two years after the date of loss." Dkt. 11-1 at 29. Here, the date of loss was October 4, 2019, and the institution of this lawsuit in 2025 was well past the two-year expiration for claims. Plaintiff asserts that there was a tolling agreement, but it is axiomatic that a Plaintiff may not amend her complaint through an opposition brief. *See Hooker v. Disbrow*, 2017 WL 1377696, at *4 (E.D. Va. Apr. 13, 2007) (refusing to consider new facts and claims raised in opposition to motion to dismiss because such "allegations were not contained in" the complaint); *see also Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) ("[I]t is . . . 'axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'"). Thus, the Motion will be granted in this regard, but, to the extent there is a valid tolling agreement, Plaintiff could add allegations regarding such agreement in a subsequent complaint.

      C.      Whether Plaintiff has Plausibly Alleged a Breach

The elements of a breach of contract claim are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *White v. Trans Union LLC*, 2025 WL 409660, at *4 (E.D. Va. Feb. 5, 2025) (citing *NAC Consulting, LLC v. 3Advance, LLC*, 650 F. Supp. 3d 441, 447 (E.D. Va. 2023)).  Here, Defendants challenge whether Plaintiff has adequately alleged a breach.

Plaintiff concedes that she has been paid $833,067.80 by Trumbull.  Dkt. 11 ¶ 20.  The Policy provides that, absent the application of the 1.5 times modifier, the total due under the Policy would be $666,000.  *Id.* ¶ 12.  In her Opposition, Plaintiff concedes that "the policy requires that Plaintiff actually complete repair or replacement of the dwelling at the loss location to be entitled to the supplemental limits under the policy."  Dkt. 15 at 6.  The Amended Complaint does not allege that Plaintiff has done so.  *See generally* Dkt. 11.  Moreover, the Opposition appears to concede that Plaintiff has not done so.  Dkt. 15 at 6 (arguing that "Plaintiff attempted to begin repairs on her home on multiple occasions" but the "funds are not enough to pay for the necessary rebuild").  The breach asserted by Plaintiff in the Amended Complaint is the failure pay "Plaintiff the entirety of what she is owed under the Policy."  Dkt. 11 ¶ 29.  But there can be no breach of any payment provision, where Defendants were not required to pay until the rebuild was complete and where Plaintiff has concededly not completed the rebuild.  Dkt. 11-1 at 10 (stating "we will pay no more than the actual cash value of the damage until actual repair or replacement is complete").  Accordingly, Plaintiff has failed to plausibly state a claim for breach of contract.

Seeking to avoid this conclusion, Plaintiff attempts to reframe her Amended Complaint as seeking "an order [finding that] her proposed rebuilds are within contractual limits and would

trigger Defendant's repayment obligations." Dkt. 15 at 7. Although this is relief that Plaintiff seeks in the Amended Complaint, she does not base her breach of contract claim on any claim that Defendant has unreasonably rejected her proposed rebuilds. And there are no allegations in the Amended Complaint regarding rejection of any proposed rebuild. Dkt. 11. As noted *supra*, Plaintiff cannot amend her complaint through her Opposition brief. *See Hooker*, 2017 WL 1377696, at *4 (refusing to consider new facts and claims raised in opposition to motion to dismiss because such "allegations were not contained in" the complaint); *see also Katz*, 332 F. Supp. 2d at 917 n.9 ("[I]t is . . . 'axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'"). Moreover, there can be no right to relief where Plaintiff has failed to allege a cause of action. As discussed above, Plaintiff has failed to plausibly allege her only asserted cause of action: an alleged breach of contract premised on the failure to pay the 1.5 times multiplied amount. Thus, Plaintiff's argument in this regard fails to persuade.

## IV.  CONCLUSION

In short, the documentation before the Court establishes that, at a minimum, Hartford held itself out as Plaintiff's insurer and Defendants cite no authority regarding why that is not sufficient to retain Hartford as a defendant in this case. Nonetheless, the Motion will otherwise be granted because Plaintiff has not alleged facts demonstrating that the Amended Complaint is not time-barred under the Policy and because Plaintiff has not plausibly alleged a breach of contract. The Court cannot say, however, on this record that these deficiencies could not be remedied and so will permit one final attempt at amendment for Plaintiff to state a claim.

Accordingly, it is hereby ORDERED that the Motion to Dismiss (Dkt. 12) is GRANTED-IN-PART and DENIED-IN-PART. The Motion is denied to the extent it seeks dismissal based on

the argument that Hartford is not a proper party.  The Motion is granted to the extent it argues that the breach of contract claim is time-barred and to the extent it argues that Plaintiff fails to state a breach of contract claim; and it is

FURTHER ORDERED that the Complaint (Dkt. 1) is DISMISSED without prejudice; and it is

FURTHER ORDERED that, if Plaintiff seeks to amend her Complaint, she is DIRECTED to file any amended complaint on or before Monday, April 6, 2026.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all parties.

It is SO ORDERED.

Alexandria, Virginia
March 23, 2026

/s/

Rossie D. Alston, Jr.
United States District Judge

10